CREAM OF WHEAT CO. v. AMERICAN HOME MAGAZINE CO.

(Supreme Court, Appellate Division, First Department.    December 19, 1913.)

1. DISCOVERY (§ 86*)—INSPECTION OF WRITINGS—EFFECT OF CONTRACT.

Where a contract between the publisher of a magazine and an advertiser provided that the publisher would allow the advertiser to have at any time full access to all of its records for the purpose of examining and ascertaining the circulation of the magazine, that such examination might be made at any reasonable time without notice, but not oftener than twice in each year, and that, if it should appear upon such examination that the paid circulation was less than that stated in the contract, the advertiser should receive a pro rata rebate upon the agreed cost of the advertising, the advertiser, in an action on the contract in which it intended to question the amount of the paid circulation, was entitled to an inspection of the publisher's books before framing its complaint; it having no other way of ascertaining the circulation, and the publisher having precluded itself from objecting to such examination on the ground that it would disclose its business secrets.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 110–112; Dec. Dig. § 86.*]

2. DISCOVERY (§ 86*)—INSPECTION OF WRITINGS—EFFECT OF CONTRACT.

Under a contract between the publisher of a magazine and an advertiser authorizing the advertiser to have full access to the publisher's records for the purpose of examining and ascertaining the circulation of the magazine, such examination to be made at any reasonable time without notice but not oftener than twice in each year, and providing that, if upon such examination it should appear that the paid circulation was less than 285,000 copies, the advertiser should be entitled to a pro rata rebate upon the agreed cost of the advertising, the advertiser was entitled to only such examination of the publisher's books as was necessary to ascertain whether the circulation amounted to 285,000 copies, and, if it was found that it did, it was not entitled to make any further examination, nor had it the right to make copies of the accounts or agreements with other parties, although its agent should be allowed to make and carry away memoranda and abstracts.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 110–112; Dec. Dig. § 86.*]

3. DISCOVERY (§ 89*)—INSPECTION OF WRITINGS—EFFECT OF CONTRACT.

In an action on such contract, where an expert accountant whom the advertiser proposed to employ, and who had already had experience in examining the publisher's books and papers, swore positively that it would be necessary to examine all the books and records enumerated by the advertiser on his application for an inspection, the court could not limit the scope of the inspection.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 115; Dec. Dig. § 89.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

See, also, 144 N. Y. Supp. 876.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Joseph J. Baker, of New York City, for appellant.

Clarence J. Shearn, of New York City, for respondent.

SCOTT, J. [1-3] Plaintiff, manufacturer of cereal food, contracted with defendant, publisher of a monthly paper or magazine known as "Good Housekeeping Magazine," for the publication of an advertisement in each issue of said periodical during the year 1912 for the consideration of $500 per page per insertion. This rate was fixed upon an assumed average paid circulation of the magazine, stated in the contract to mean:

"The total number of copies of each issue of the publication above mentioned which shall be published, and sold and delivered by the publishers thereof both to paid subscribers and to news agencies, exclusive of all returns from news agencies and copies given away in any manner whatever."

Then follows an extremely broad authorization to plaintiff to examine defendant's books and records, as follows:

"And it is hereby understood and agreed that the said publishers of 'Good Housekeeping Magazine' will allow the said Cream of Wheat Company, or its authorized agent, to have at any time full access to all of their records for the purpose of examining and ascertaining the circulation of the said Good Housekeeping Magazine, it being understood that said examination may be made at any reasonable time by the said Cream of Wheat Company or its authorized agent, without notice, but that said examination shall not be made oftener than twice in each year; and it is further understood and agreed in case said examintaion does not bear out the circulation claimed and embodied in said contract, and shall be found to be less than two hundred and eighty-five thousand (285,000) copies, that the expense of this examination, not to exceed fifty ($50.00) dollars, shall be borne by the said American Home Magazine Company, otherwise by the said Cream of Wheat Company."

It is then agreed that, if upon such an examination it shall appear that the paid circulation is less than 285,000 copies, plaintiff shall be entitled to receive a pro rata rebate upon the agreed cost of the advertising. Plaintiff expresses the belief, founded as it says upon information received by it, that the actual paid circulation in the year 1912 fell far below 285,000 copies per month, and states that it intends in this action to raise and have determined the question whether the various methods of circulation of said magazine in 1912 resulted in paid circulation as used and defined in the contract. What are the "methods of circulation" thus hinted at does not appear, but it may be inferred that they are something out of the ordinary by the vehement protest of defendant's president against any examination which might result in the disclosure to defendant's competitors of its methods of doing business. The defendant's objections to the examination are those

commonly made to all applications for such examination, to wit, that it is not necessary to enable plaintiff to frame his complaint, and therefore should not be had at the present time, and further that the examination should not be made at all because it might result in disclosing defendant's business secrets.   Both of these objections, as we think, are met by the express terms of the contract, and by the rulings in Fidelity & Casualty Company v. Seagrist, 79 App. Div. 614, 80 N. Y. Supp. 277, and Ballenberg v. Wahn, 103 App. Div. 34, 92 N. Y. Supp. 830, and kindred cases.   In the former case this court said:

"In view of the nature of the contract whereby the amount of premium was to be determined by the amount actually paid by the defendant to its employés, it is evident that the only method the plaintiff had of ascertaining the amount of premium to be paid was by evidence that could only be furnished by the defendant.  The plaintiff was therefore in a position in which it had to accept the statement of the defendant as to such amount, or have the right to examine the defendant's books of account to ascertain the correctness of the statements made.  To meet this condition, the defendant expressly agreed that the plaintiff should have the right to examine the defendant's books of account to verify the statement made as to the amount paid to its employés.  The court below was satisfied that the defendant had refused to allow this examination, which, by its contract, it had agreed to allow; and it was as an enforcement of this agreement that the court was justified upon these allegations in requiring the defendant to submit its books containing the entries of the payments to its employés for inspection by the plaintiff.  The general rule requiring a defendant to submit his private books and papers for an inspection by an adverse party is not applicable in such a case where, from the nature of the contract between the parties, the only method by which the amount due to the plaintiff could be ascertained was by an examination of the defendant's books, and where the parties, in view of this situation, had expressly agreed that the plaintiff should be entitled to such an examination.  *  *  *  We think, in view of the special contract between the parties, and the nature of the obligation of the defendant sought to be enforced in this proceeding, the court below was justified in allowing such an inspection as was necessary to determine the amount that the defendant actually paid to its employés during the period that these policies were in force."

These words are entirely applicable to the present case.

We are not satisfied, however, that plaintiff's demand does not go further than its right.   The parties have had correspondence on the subject of an examination, resulting apparently in some little heat which has led each to demand more than it is strictly entitled to. While the language of the contract is extremely broad entitling plaintiff to have full access to all of defendant's records, this phrase must be construed in the light of the purpose to be effected by such examination, i. e., the ascertainment of the fact whether or not the circulation of defendant's magazine amounted to 285,000 copies per month. If it be found that it did reach that sum, the purpose of the examination has been accomplished, and it is not necessary to go further, because it is no concern of plaintiff how much the circulation may exceed the stipulated figure.   So, also, the contract does not give plaintiff the right to make copies of defendant's accounts, and agreements with other parties, as plaintiff apparently desires to do, although whoever may make the examination on behalf of plaintiff should be allowed to make and carry away memoranda and abstracts, for plaintiff should not be required to rely wholly upon the ipse dixit of the exam-

iner, even of his own selection. When it comes to determining what books and records should be examined, there is naturally some difficulty. To the eye of a layman it would seem that it ought not to be necessary to examine all the records enumerated by plaintiff, but the expert accountant whom plaintiff proposes to employ, and who has already had the experience of examining defendant's books and papers, swears positively that it will be necessary to examine them all in order to make a proper audit. The defendant's objection is that such an examination may disclose secrets which it would prefer to keep secret. The difficulty is that by its contract it has foreclosed itself on this question. To induce plaintiff to advertise in its columns, it has agreed to permit an inspection of all of its records, by any authorized agent. If plaintiff is entitled to an inspection at all, as we clearly think it is, we cannot see how the court can limit the scope of the inspection.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion granted subject to the limitations above indicated. Settle order on notice. All concur.

---

### CREAM OF WHEAT CO. v. AMERICAN HOME MAGAZINE CO.

(Supreme Court, Appellate Division, First Department. December 19, 1913.)

Appeal from Special Term, New York County.

Action by the Cream of Wheat Company against the American Home Magazine Company. From an order denying a motion for extension of time to serve the complaint, plaintiff appeals. Reversed, and motion for extension granted. See, also, 144 N. Y. Supp. 873.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Joseph J. Baker, of New York City, for appellant.
Clarence J. Shearn, of New York City, for respondent.

